Filed 3/14/23  In re N.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B323332 (Super. Ct. No. J073014) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. J.C., Defendant and Appellant. | |

Father J.C. (Father) appeals from the juvenile court's order terminating parental rights to his daughter, N.C., and selecting adoption as the permanent plan.  (Welf. & Inst. Code,[1] § 366.26.) He contends the court erred in finding the beneficial parental

---

[1]Further unspecified statutory references are to the Welfare and Institutions Code.

relationship exception inapplicable. (*Id*., subd. (c)(1)(B)(i).) Mother is not a party to this appeal. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Newborn N.C. spent eighteen days in the neonatal intensive care unit after testing positive for fentanyl and methamphetamine at birth. She required daily doses of morphine to ease her withdrawal symptoms. The Ventura County Human Services Agency (the Agency) placed her with a confidential resource family upon discharge and allowed Father and Mother supervised visitation twice a week. N.C. has not lived with them at any time since birth.

The Agency filed a juvenile petition (§ 300) alleging N.C.'s mother abused drugs while pregnant. The petition alleged Father had a history of drug-related arrests and suffered from mental health issues. The juvenile court sustained the petition and bypassed reunification services for both parents. It ordered their existing visitation schedule to remain in place and set a contested selection and implementation hearing. (§ 366.26.)

*Section 366.26 report and pretrial memorandum*

The Agency's section 366.26 report described parents as making "significant changes in their diligence and consistency to attend family time" and providing N.C. "with adequate nurturing care" during their visits. Father showed affection toward his daughter and took turns with Mother feeding and holding her. However, N.C. had started showing "noticeable concerning reactions during family time sessions with the parents," such as starting "to scream, cry, and becoming noticeably more irritable/harder to soothe." The case worker also expressed concern about parents' ongoing failure to seek substance abuse treatment.

2

The Agency recommended terminating parental rights to allow adoption as the permanent plan. The report found doing so "would not be detrimental to [N.C.], as she does not have a significant parental bond with any other adult(s), other than her current prospective adoptive mother." It stated N.C. would "benefit from the care and supervision" she would receive in a permanent home.

*Section 366.26 hearing*

N.C. was eight months old at the time of the section 366.26 hearing. A social worker testified about the family who had cared for N.C. since her discharge from the hospital eight months earlier. The social worker also answered questions about Father's and Mother's supervised visits. She testified they "did a good job" interacting with N.C. but missed several visits and often arrived late. Father and Mother testified about the bond they had developed with N.C. despite their limited time together. They acknowledged it was best for N.C. to remain with the resource family. They nevertheless wished to remain part of her life and requested the court order legal guardianship rather than terminate their parental rights.

After closing remarks, the juvenile court stated on the record that Father and Mother showed "great love" for N.C. during their visits. "But based on the age of the child," the court concluded, "the amount of time the parents have been able to spend with the child, the extended time the child now has had in this child's entire life with a single caregiver, the Court does not find that there would be any detriment to the child should that relationship be terminated." The court found by clear and convincing evidence that N.C. would be adopted and terminated parental rights. Father appealed.

DISCUSSION

Father contends the juvenile court erred when it found the beneficial parental relationship exception did not apply. There is no error.

The juvenile court selects and implements a permanent plan for a dependent child at a section 366.26 hearing. (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) Adoption is the "'permanent plan preferred by the Legislature.'" (*In re D.O.* (2016) 247 Cal.App.4th 166, 173; *Caden C.* at p. 630.) The court must first determine by clear and convincing evidence "that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) If so, the court must "terminate parental rights and order the child placed for adoption" unless a statutory exception applies. (*Ibid.*) One of these is the beneficial parental relationship exception. (*Id.*, subd. (c)(1)(B).) It applies when a parent shows: "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C.* at p. 631, italics omitted.) The parent must prove these three elements by a preponderance of the evidence. (*Id.* at p. 636.)

A hybrid standard of review applies to the juvenile court's findings. We review the factual determinations for substantial evidence. (*Caden C.*, 11 Cal.5th at pp. 639-640.) The ultimate decision whether to apply the exception, however, "is discretionary and properly reviewed for abuse of discretion." (*Ibid.*) "A court abuses its discretion only when ""the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination""" such that """no judge could reasonably have made the order.""" (*Id.* at p. 641.)

4

*Regular Visitation*

No dispute existed below as to whether Father contacted and visited with N.C. regularly. We proceed directly to the second and third elements of the exception.

*Beneficial Relationship*

The second element requires the court to determine whether the child has a "substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) The court looks to several factors, "such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and [the] child, and the child's particular needs.' [Citation.]" (*Id.* at p. 632.) A "showing the child . . . derive[s] *some* benefit from continuing a relationship maintained during periods of visitation" is not a sufficient ground to depart from the statutory preference for adoption. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) Friendly or affectionate visits with a parent are not enough. (*Id.* at p. 468.)

Substantial evidence supports the juvenile court's finding that Father did not establish a beneficial relationship with N.C. The Agency took the child into protective custody at birth and placed her with a resource family when the hospital discharged her. As a result, she did not live with Father during any time before the section 366.26 hearing. The only interactions observed between Father and N.C. occurred during supervised, twice-weekly visits. Father "provide[d] her with adequate and nurturing care" but this evidence did not show N.C. had the type of "substantial, positive, emotional attachment" that satisfies the second element of the exception. (See *In re Bailey J.* (2010) 189

Cal.App.4th 1308, 1316 [exception did not apply where child taken into protected custody shortly after birth and mother's supervised weekly visits "amounted to little more than playdates for him with a loving adult"].)

*Detriment of Termination*

Even if Father could establish that N.C. would benefit from a continuing relationship, the juvenile court found that terminating Father's parental rights would not be detrimental to N.C. The court did not err.

The court "acts in the child's best interest in a specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' [Citation.]" (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) This finding is prospective in nature. The court must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Ibid*.)

No abuse of discretion occurred. N.C. had lived with the prospective adoptive family her entire life. Father visited her regularly but she had recently begun screaming, crying, and becoming "noticeably more irritated [and] harder to soothe" during these visits. Testifying that he loved N.C. and enjoyed their time together did not show how terminating his parental rights would cause her detriment or would outweigh the benefits of adoption. (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 321-322 [father's unresolved substance abuse issues "diminished any benefits she derived from a continuing relationship with him, aside from the incidental benefit necessarily conferred by a parent's fun, playful interactions with his child"].)

Because we conclude the juvenile court did not err in finding the beneficial parental relationship exception did not apply, there was no error in terminating parental rights.

DISPOSITION

The order terminating parental rights is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Tari L. Cody, Judge
Manuel J. Covarrubias, Judge
Superior Court County of Ventura

_____

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.